UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES LIABILITY INSURANCE COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> COREY PARCHMAN and <br> ROLANDA DIABY, as Special Administrator of the Estate of Shawn Campbell, Deceased <br><br> Defendants. | Case No. 1:11-cv-01244-TWP-DML |

**ENTRY ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

This matter is before the Court on the parties' cross motions for summary judgment. Plaintiff, United States Liability Insurance Company ("USLIC"), filed this action seeking declaratory judgment that it has no duty to defend or indemnify Defendant Corey Parchman ("Mr. Parchman") in state court tort proceedings (Dkt. 1). The underlying state court tort proceeding arises from a December 20, 2010 talent show called the Ice Cold Christmas Jam ("the Event"), held at the Indiana State Fairgrounds. The Event was facilitated by Mr. Parchman and insured by USLIC. Defendant Rolanda Diaby ("Ms. Diaby"), as the Special Administrator of the Estate of Shawn Campbell, deceased, filed suit in state court against Mr. Parchman and others alleging that their negligent acts resulted in the wrongful death of her son, Shawn Campbell ("Mr. Campbell"). For the reasons set forth below, USLIC's Motion for Summary Judgment (Dkt. 32) is **GRANTED** and Ms. Diaby's Motion for Summary Judgment (Dkt. 39) is **DENIED**.

**I. BACKGROUND**

The following facts are undisputed. Mr. Parchman leased the Blue Ribbon Pavilion Building at the Indiana State Fairgrounds to host a talent show for musical acts. The Event took

place on December 20, 2010 and was marketed to high school students.  Mr. Parchman hired security for the occasion and purchased a premises liability insurance policy, because the Indiana State Fairgrounds requires all lessees to secure insurance for events held on the premises.  Mr. Parchman secured a policy from USLIC that met the lease's requirements.  The policy included the following relevant provisions:

> **SECTION I – COVERAGES**
>
> **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> *Insuring agreement*
>
> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. . . .
>
> \* \* \*
>
> **SECTION V – DEFINITIONS**
>
> \* \* \*
>
> 13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

Dkt. 34-1 at 6, 19.  The policy also included an "Exclusion for Firearms, Fireworks and other Pyrotechnic Devices," that stated:

> A. This insurance does not apply to "bodily injury", "property damage", "personal and advertising injury" or medical expenses including damages for care and loss of services:
>
> > (i) Arising from the ownership, maintenance, operation, sponsorship, set-up or take-down or other use of:

2

>> a. Firearms, including handguns, revolvers, pistols, rifles, shotguns, air guns, semi-automatic weapons and similar devices;
>
>> b. Fireworks, including firecrackers, Roman Candles, pinwheels skyrockets, ground displays, flares, smoke bombs and similar devices that produce, when ignited or activated, sound, smoke, motion or a combination of these;
>
> by any Insured or by any person for which any Insured may be held liable in any capacity.
>
> B. This insurance does not apply to any obligation of any Insured to indemnify, defend or contribute jointly or severally with another because of "bodily injury", "property damage", "personal and advertising injury" or medical expenses arising from any of the activities specified in A(i) above.

Dkt. 34-1 at 42.

After the Event, as attendees exited the Blue Ribbon Pavilion, gunshots were fired and tragically, Mr. Campbell was killed by a stray bullet after he exited the building. David Brookins, a non-party in the state court tort action, was the shooter. As a result of the incident, Ms. Diaby, as administrator of Mr. Campbell's estate, filed suit against Mr. Parchman and others in state court, alleging that they failed to obtain proper permitting, to provide proper security, to provide a safe environment for invitees, to maintain the premises in a reasonably safe condition, and did maintain a private nuisance resulting in death. USLIC then filed this action for declaratory judgment.

## II. **LEGAL STANDARD**

Summary judgment is only appropriate by the terms of Rule 56(c) where there exists "no genuine issue as to any material facts and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. This notion applies equally where, as here, opposing parties each move for summary judgment in their favor pursuant to Rule 56. *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 774 (7th Cir. 1996). Indeed, the existence of cross-motions for summary judgment does not

necessarily mean that there are no genuine issues of material fact. *R.J. Corman Derailment Serv., Inc. v. Int'l Union of Operating Eng'rs.*, 335 F.3d 643, 647 (7th Cir. 2003). Rather, the process of taking the facts in the light most favorable to the non-movant, first for one side and then for the other, may reveal that neither side has enough to prevail without a trial. *Id.* at 648. "With cross-motions, [the Court's] review of the record requires that [the Court] construe all inferences in favor of the party against whom the motion under consideration is made." *O'Regan v. Arbitration Forums, Ins.*, 246 F.3d 975, 983 (7th Cir. 2001) (quoting *Hendricks–Robinson v. Excel Corp.*, 154 F.3d 685, 692 (7th Cir. 1998)).

## III. DISCUSSION

Under Indiana law, the interpretation of an insurance policy is a question of law appropriate for summary judgment. *Nat'l Athletics Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). "If the language in the insurance policy is clear and unambiguous, then it should be given its plain and ordinary meaning[.]" *Id.* Ambiguous language in insurance policies, however, will be "strictly construed" against the insurance company. *USA Life One Ins. Co. v. Nuckolls*, 682 N.E.2d 534, 538 (Ind. 1997). Moreover, "[a]n insurer's duty to defend its insured is broader than its duty to indemnify." *Knight v. Ind. Ins. Co.*, 871 N.E.2d 357, 362 (Ind. Ct. App. 2007). Indiana courts determine an insurer's duty to defend from the allegations of the complaint and facts known or ascertainable by the insurer after reasonable investigation, focusing on the "nature of the claim, not its merit." *Id.* "Imbedded within the analysis of commercial general liability coverage is the notion that there are two types of risk inherent in a contractor's line of work: (1) business risk, and (2) occurrences that give rise to insurable liability." *Jim Barna Log Sys. Midwest, Inc. v. Gen. Cas. Ins. Co. of Wis.*, 791 N.E.2d 816, 823 (Ind. Ct. App. 2003).

### A. Applicability of the Firearms Exclusion

The policy at issue contains a firearms exclusion clause, which the Court finds dispositive in this case. Although USLIC concedes that the exclusion under section A(i), *see* Dkt. 34-1 at 42, does not apply, it argues that section B functions to exclude coverage. Section B states, "This insurance does not apply to any obligation of any Insured to indemnify, defend or contribute jointly or severally with another because of 'bodily injury', 'property damage', 'personal and advertising injury' or medical expenses arising from any of the activities specified in A(i) above." Dkt. 34-1 at 2. Section A(i) includes the "ownership, maintenance, operation, sponsorship, set-up or take-down or other use of" firearms. Dkt. 34-1 at 42. USLIC specifically argues that because Mr. Campbell's "death resulted from the ownership or use of a firearm by someone who is jointly liable to the Estate," there is no coverage under their policy. In other words, USLIC contends that because the shooter, David Brookins, is jointly liable and named as a non-party to whom the jury may allocate fault in the underlying tort lawsuit, section B of the policy applies and thus coverage is excluded.

To the contrary, Ms. Diaby first contends that because section A does not apply, section B is necessarily inapplicable because it incorporates section (A)(i). Section A applies when the bodily injury is caused by "any Insured or by any person for which any Insured may be held liable in any capacity." Dkt. 34-1 at 42. In this case, it is undisputed that neither Mr. Parchman, nor any employee or agent of Mr. Parchman, used a firearm to cause Mr. Campbell's death. USLI concedes that the Section A(i)(a) exclusion does not apply. Section A(i) specifically describes activities such as ownership and operation of firearms, but does not contain any limitations. Therefore, the Court finds that Ms. Diaby's interpretation of the exclusion is incorrect; section B is not rendered inapplicable because it invokes section A(i). If the USLIC

policy only intended to exclude acts which were committed by an insured and an agent or employee of the insured, then section B would be superfluous.

Second, Ms. Diaby contends that USLIC's reading of the policy is inconsistent with Indiana law. Specifically she argues that because the Indiana Comparative Fault Act abrogated joint and several liability in Indiana, it would contravene public policy to apply the concept through an insurance policy.[1] Ms. Diaby is correct that the common law concept of joint and several liability is no longer viable in Indiana; however, the Court is not convinced that the Indiana Comparative Fault Act negates section B in the USLIC policy. The policy reads "jointly or severally," and does not suggest that the exclusion applies only in cases where "joint and several" liability is still the reigning standard. Therefore, the Court sees no reason why the exclusion would not apply in the comparative fault context. The Court finds that it does not violate public policy or Indiana law to interpret the unambiguous policy language, "contribute jointly or severally," as excluding coverage in this case.

**B.      The Requirement of an Occurrence**

Because the parties also address the policy's requirement that the claimed "bodily injury" arise from an "occurrence," the Court will address this alternative ground for denying coverage. An occurrence is defined as an "accident, including continuous or repeated exposure to substantially the same general harmful conditions." Dkt. 34-1 at 19. Although the term "accident" itself is not defined, Indiana courts define the term "accident," as used in insurance contracts, as "an unexpected happening without intention or design." *Auto-Owners Ins. Co. v. Harvey*, 842 N.E.2d 1279, 1283 (Ind. 2006). To determine if the duty to defend is triggered, the

---

[1] Ms. Diaby notes that there is no Indiana authority interpreting this or a similar policy exclusion. The Court likewise could find no authority interpreting a similar policy exclusion.

key inquiry is whether any of the allegations contained in the complaint allege accidental conduct. *Jim Barna*, 791 N.E.2d at 826.

USLIC relies on *Tri-Etch, Inc. v. Cincinnati Ins. Co.*, 909 N.E.2d 997 (Ind. 2009), to support its position that if Mr. Parchman is held liable for failing to provide adequate security, the failure was a result of business risks that were not accidental. Ms. Diaby, relying on *Harvey*, contends that despite Mr. Parchman's business decisions, he did not intend for the premises to become unsafe or violent; therefore, Mr. Campbell's death was a result of Mr. Parchman's accidental conduct, or an occurrence, under the policy.

In *Harvey*, decided in 2006, the Indiana Supreme Court considered whether an accidental drowning caused in part by intentional conduct was an "occurrence" as defined in an insurance policy that included the identical definition as contained in the USLIC policy at issue. 842 N.E.2d at 1283. The deceased in *Harvey* was intentionally pushed by her boyfriend; she then slipped and fell into a river and drowned. *Id.* at 1281–82. The insurer argued that the drowning was not an occurrence under the policy because, although the boyfriend did not intend to harm the deceased, he did intentionally push her; therefore, the insurer urged, "Brandy's death was the natural and probable result of Gearhart's voluntary and intentional act of pushing, and thus her death should not be considered an 'accident' for insurance purposes." *Id.* at 1283. The Court explained that the policy was unclear in its application, because the term "occurrence" could refer to the push *or* the drowning. *Id.* at 1284. Because of this ambiguity, the Court construed the policy against the insurer and held that "occurrence" applied to the deceased's slip, fall, and drowning. *Id.* at 1285. Finding that the drowning was within the definition of "an unexpected happening without an intention or design," notwithstanding the intentional push preceding it, the Court ultimately held that the insurance policy applied. *Id.*

In *Tri-Etch*, decided in 2009, the Indiana Supreme Court considered whether an alarm company's unintentional mistake was an "accident" under policy language similar to that at issue in this case. 909 N.E.2d at 1001. *Tri-Etch* involved a store employee working a closing shift. The employee was supposed to set the retailer's alarm system at midnight, but failed to do so. The alarm company customarily alerted the retailer by 12:30 a.m. if the alarm had not been set at the designated time, but on this night, the alarm company unintentionally delayed in alerting the retailer until 3:15 a.m. Upon visiting the store to investigate why the alarm was not set, the retailer then discovered that the employee and money were missing. The employee was later found dead. *See Tri-Etch, Inc. v. Cincinnati Ins. Co.*, 891 N.E.2d 563, 565–66 (Ind. Ct. App. 2008), *vacated under Ind. Rule App. P. 58 by* 915 N.E.2d 978 (Table). The Court stated that the "[l]ack of intentional wrongdoing does not convert every business error into an 'accident.'" *Tri-Etch*, 909 N.E.2d at 1001. Instead, the alarm company's failure was an error or omission that was not an "occurrence" under the applicable insurance policy. The Court reasoned that to the extent the alarm company had a duty to the employee, tort liability may arise. *Id.* "But it does not convert a failure to meet a standard of care under a contractually assumed duty into an 'accident.'" *Id.* Citing 9A Couch on Insurance § 129:1 (3d ed. 2005), the Court noted that "[n]ot all tort claims are necessarily 'occurrences.'" *Id.* at 1002. Couch explains that "there is a difference between risks that arise out of a business and business risks. While the former may be covered under a commercial general liability insurance policy, the latter is not." 9A Couch on Insurance § 129:1.

USLIC contends that any negligence on Mr. Parchman's part was business risk, i.e., failing to hire adequate security personnel, failing to maintain a safe environment, or obtain proper permitting. Ms. Diaby contends that such an interpretation renders USLIC's coverage

8

illusory, because if "Plaintiff's logic is followed to its obvious conclusion, without consideration of how the facts of this case are applied to that principle, then no incident that occurred at the Event would be covered under the Policy." Dkt. 40 at 8–9. *See Haag v. Castro*, 959 N.E.2d 819, 824 (Ind. 2012) ("Coverage under an insurance policy is not illusory unless the policy would not pay benefits under any reasonably expected set of circumstances."). USLIC refutes this claim, arguing that the policy would apply to "injuries resulting from defects in the premises such as slip and falls, electric shock, or collapse" or " false arrest, detention, or imprisonment." Dkt. 42 at 4.

That said, the Court must reject Ms. Diaby's claim that USLIC could escape coverage for any claim by invoking his business decisions of how to "put on" the Event, *see* Dkt. 40 at 10, as overly broad and untenable. The Court is persuaded by USLIC and finds *Tri-Etch* to be the relevant authority guiding the Court's decision. Even if Mr. Parchman negligently failed to hire adequate security, maintain proper permits, or maintain the premises in a reasonably safe condition, this negligence was not an "unexpected happening without intention or design." Although he did not intentionally commit wrongdoing, this failure does not convert his actions into an "accident," much like the insureds in *Tri-Etch* or in *Erie Ins. Co. v. Am. Painting Co.*, 678 N.E.2d 844, 845–46 (Ind. Ct. App. 1997). In *Erie*, the Indiana Court of Appeals held that the negligent hiring of an employee was not accidental; therefore the policy was not triggered when the employee burglarized a home. 678 N.E.2d at 845–46. Mr. Parchman's actions are distinguishable from those of the insured in *Harvey*, which did not involve a commercial general liability policy, but a homeowner's insurance policy, and further included direct physical conduct with the deceased. In *Harvey*, the Court noted that *Erie* and other cases involving "whether 'occurrence' applies to circumstances remote from instances of specific physical conduct, but

rather arising from claims based on commercial or professional conduct," contrast from situations such as the intentional push in *Harvey*. 842 N.E.2d 1284. Thus, the Court is persuaded that under Indiana law, Mr. Parchman's conduct was "commercial or professional" and while the event of Mr. Campbell's death was unforeseen, unintentional and very unfortunate, it is not the sort of incident that triggers the commercial general liability policy. Therefore, the policy at issue is not triggered and USLIC does not have a duty to defend or indemnify.

## IV.  CONCLUSION

The policy issued by USLIC does not impose a duty to defend or indemnify Mr. Parchman in the underlying state court tort action. Accordingly, USLIC's motion for summary judgment (Dkt. 32) is **GRANTED**. Ms. Diaby's motion for summary judgment (Dkt. 39) is **DENIED**.

**SO ORDERED.**

Date: 06/11/2013

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

David T. Kasper
FROST BROWN TODD LLC
dkasper@fbtlaw.com

Matthew C. Boulton
KELLER & KELLER
matt@2keller.com

Randall L. Juergensen
KELLER & KELLER
randy@2keller.com